### HUTTON BROS. *v.* GORDON.

(Rockland County Court—February, 1893.)

In the absence of an agreement by the owner making himself personally
liable for the claim of a subcontractor, the latter has a claim against the
property no further than the amount unpaid on the contract at the time
of filing his lien.

ACTION to foreclose a mechanic's lien. The opinion states
the case.

*A. & A. X. Fallon,* for plaintiff.

*John McCormick,* for defendant and owner Lizzie S.
Gordon.

*Arthur S. Tompkins,* for defendants Hartwicke, Meyers
and Trasback.

*Wm. McCauley, Jr.,* for defendant Moore.

*George A. Wyre,* for defendants Eckerson & Elvery.

WEIANT, County J. This action is brought to foreclose a mechanic's lien on land of the defendant Lizzie S. Gordon.

The defendant Gordon being the owner of certain lots at Congers in this county, on December 11, 1890, entered into a written contract with Butler & Thurston, a firm of builders, whereby they agreed to construct a dwelling for her upon said lots on or before April 15, 1891, for the consideration of $1,700.

This agreement was on or about August 13, 1891, superseded by a new contract in writing, entered into between the same parties, whereby said Butler & Thurston agreed to construct said dwelling and furnish all materials for the like consideration, to be paid to them in three equal payments, one when the house was "raised, framed and inclosed;" the second "when the plastering is all complete;" and the third "when the house is finished and completed according to the plans and specifications." The house was to be erected and finished on or before November 15, 1891. The work was to be done to the satisfaction and under the direction of one David L. Allen. The contract provided that at any time during the progress of constructing the building the owner might request any alteration of, addition to, or omission from the contract, and that the same should in no way affect the contract, but that a reasonable valuation should be added to or deducted from the contract price accordingly.

It was, also, provided that should the contractors, at any time during the progress of the work, refuse or neglect to supply a sufficiency of materials or workmen, the owner should have power to provide materials and workmen, after three days' notice in writing being given the contractors to finish the said work, and the expense should be deducted from the amount of the contract. The contract, also, contained a covenant on the part of the contractors to pay to the owner ten dollars for every day the said building should be incomplete after November 15, 1891. The contractors proceeded with the

construction of the building under this agreement until about the 1st of December, 1891. The work had been sufficiently advanced to entitle the builders to the first two installments of payment, and the owner had made the same in compliance with the contract, amounting to $1,133.33, the latter one of which was made September 26, 1891. The builders proceeded with their work some time thereafter, and now claim that at the time they ceased, they had done work and supplied materials to the value of $1,200, $1,300 or $1,400. Differences arose between the builders and the owner as to whether or not the work and materials were in compliance with the contract, and as to changes and alterations in portions of the structure. The work was delayed, and finally the builders refused to proceed with the work and complete the building, and finally ceased the latter part of November or 1st of December, 1891.

Negotiations and conferences followed between the parties for the purpose of adjusting these differences and bringing about the completion of the building. On or about December 29, 1891, it appears that at a conference in New York city an amicable arrangement was reached, under which the builders were to proceed and finish the building under the contract, with certain alterations. This arrangement was reduced to writing, but the contractors refused to execute the same or to proceed with their work unless the owner, Mrs. Gordon, would release them from any liability for the ten dollars a day that they were obligated to pay under the contract for failure to complete the building within the time required by the contract. Thereupon, about January 5, 1892, the owner caused a written notice to be served upon the contractors, in which she stated that unless they proceeded within three days to the completion of the building as provided by the plans and specifications, she would proceed to complete the building and hold them responsible for all expense thereof.

The contractors refused to proceed, and the owner then proceeded to complete the building, and for the same incurred an expenditure and cost of about $685. The plaintiff, a cor-

poration, under purchases made by Butler & Thurston, the contractors, between August 22 and December 15, 1891, furnished materials and delivered the same to be used in the construction of this building in question to the amount and value of $329.20, of which $100 was paid by such contractors. Upon January 16, 1892, it filed a notice of lien for $229.20, for materials delivered to said Butler & Thurston, to be used in the construction of said building. There is not sufficient evidence to connect the owner, Mrs. Gordon, with the furnishing or use of these materials so as to establish a personal liability against her.

The plaintiff must, therefore, rest as to the liability of the lands in question upon the relations established between her and the contractors, Butler & Thurston. It is, therefore, necessary that we should first give consideration to the legal status of the contractors and owner. It is conceded that Butler & Thurston did not complete their contract and abandoned the construction of the building. This I do not think they were justified in doing under the facts and circumstances, even if their contention be true that Mrs. Gordon was wrong in her claims as to the alterations, deviations from or failures to comply with the plans and specifications for, as appears, the contract provided for all such contingencies, and did not authorize an abandonment of the work for any differences such as arose between these parties. If Mrs. Gordon were in error in her claims the contractors were not relieved from carrying out the agreement on their part. Upon their refusal to proceed and complete the building, Mrs. Gordon, in accordance with the right given her under the contract, proceeded to complete the building, and pursuant to its provisions, she is entitled to deduct the expense thereof from the amount of the contract price, or any moneys Butler & Thurston may have earned. She thereafter, in January, 1892, entered into a written contract with one Theodore A. Dubois to complete the building (meaning the carpenter work) in accordance with the same plans and specifications, for the sum of $195, but not including a claim of Mead & Taft for materials of $83.39.

The evidence shows that she actually paid out or legally obligated herself to pay in the aggregate to thus complete the building the sum of about $685, excluding certain several omissions that were supplied to conform the building to the contract, which together exceeded the entire amount of the last payment and extras, if any under the contract, by at least the sum of $100, which would have been due and payable to Butler & Thurston if they had performed their contract, and even with such extra compensation, if any, as had been earned by them in addition.

Under such circumstances, Mrs. Gordon's lands cannot be subjected to the lien of the plaintiff, although Butler & Thurston had done work and furnished materials after the second payment under their contract. *Cheney* v. *Troy Hospital*, 65 N. Y. 282; *Larkin* v. *McMullin*, 120 id. 206, and cases there cited; *Foshay* v. *Robinson*, 16 N. Y. Supp. 817; *Van Clief* v. *Van Vechten*, 130 N. Y. 572. In the latter case it is said that "they (meaning subcontractors) are under the same obligations to prove performance and to the same extent that he (the contractor) would be. Their rights as lienors are measured by his rights under the contract."

The plaintiff delivered some materials after Butler & Thurston ceased work, which were subsequently used in the completion of the building by Mrs. Gordon or her agents or employees.

These consisted of window sash and some lumber of the value of $18.40. But the same were sold and delivered to Butler & Thurston upon their order and credit, and, therefore, upon such delivery of the same became the property of that firm, and the same rule that precludes the plaintiff from recovering for the other portion of its claim seems, also, to prevent a recovery for this latter sum. Nor by using these materials did any personal liability arise on Mrs. Gordon's part to the plaintiff. The title to the same was in Butler & Thurston.

Such knowledge and assent as to the using of such materials on her part may be sufficient to authorize a lien but not a contract creating a personal liability. *Spruck* v. *McRoberts*,

19 N. Y. Supp. 129. Indeed, the plaintiff in its complaint does not contain any allegations looking to charge Mrs. Gordon personally, and such relief is not asked. The plaintiff is, however, entitled to a personal judgment against the defendants Butler & Thurston for the balance of their debt, which appears to be $229.25. As to the claim of the defendant Hartwicke, who did the mason work, the same rules applied as above to the claim of the plaintiff, are applicable to him as a subcontractor under Butler & Thurston.

There appearing to be nothing due Butler & Thurston for the labor performed and the materials furnished by them in the construction of the building, after deducting the cost incurred by Mrs. Gordon in completing the building in accordance with the contract, he cannot recover on his lien.

Hartwicke's lien was filed November 27, 1891. He has no lien for labor done or materials furnished after that date, for his notice of lien does not cover labor to be performed or materials to be supplied thereafter. His answer admits that. The notice of lien must specify the materials to be furnished or labor to be performed and whether all the work or materials for which the claim is made has been actually performed or furnished, and if not, how much of it, etc. Chap. 342, Laws of 1885, § 4. Failure to comply with this requirement is fatal to the lien. *Close* v. *Clark*, 9 N. Y. Supp. 538; *Foster* v. *Schneider*, 2 id. 875; *Bulkley* v. *Kimball*, 19 id. 672.

This subcontractor testifies that Mrs. Gordon promised to pay him his claim while he was working for Butler & Thurston, if he would release his lien, which at that time he had filed, and which he did. Mrs. Gordon denies this. But if she did so agree it imposed no legal obligation upon her. Every special promise to answer for the debt of another is void unless in writing and subscribed by the promisor. 3 R. S. (5th ed.) 221, § 2. Hartwick, however, did some work on these premises of the owner after she had taken upon herself to complete the construction of the building. It seems to me that the evidence leads to the conclusion that such work was done for her and with her assent or that of her agent, and as her

employee. He thus constructed the cesspool for fifteen dollars; he performed extra work in plastering, twenty-four dollars; plastered a partition a second time owing to a change of the same, the value of which was ten dollars and eighty cents; and did work upon an arch of the value of three dollars, making an aggregate of fifty-two dollars and eighty cents, and for which sum Hartwicke is entitled to personal judgment against her. *Wollreich* v. *Fettretch*, 4 N. Y. Supp. 326; *Thomas* v. *Sahagan*, 10 id. 874.

He is also entitled to judgment against the defendants Butler & Thurston, for the sum of $181.20, which I find to be their indebtedness to him for his labor done and materials furnished in constructing this building, not including the fifty-two dollars and eighty cents above charged against Mrs. Gordon. The claims and liens of the defendants Frederick Meyers, Bernic Trasback and Newton Smith of course must fall for reasons already advanced. They were employees of or furnishers of materials to the defendant Hartwicke, and there being nothing due from the defendant Gordon, under his lien nor at the time the liens of these subcontractors were acquired, their liens must fall with his. There being no proof that they did work under the employment of Mrs. Gordon, they cannot by the judgment in this action be awarded payment from the sum due Hartwicke from Mrs. Gordon personally.

The two proved their claims to the amounts of twenty-seven dollars and seventy-five cents and twenty-two dollars and fifty cents respectively. The two former may have judgment against the defendant Hartwicke, for the said amounts owing them respectively. The defendant Smith gave no proof of his claim, nor interposed any answer, and consequently he is not entitled to any affirmative relief. *Morgan* v. *Stevens*, 6 Abb. N. C. 356; Code Civ. Proc. § 521; chap. 342, Laws of 1885, § 17.

The lien of the defendant Moore, for tinning and hardware is ineffective for the reasons assigned as to the liens of the claimants, Hutton Brothers, and Hartwicke. His lien was filed December 2, 1891, and his notice does not specify that he

claims a lien for future labor to be performed or materials to be furnished, and as we have seen from the authorities cited, his notice of lien is insufficient to cover such.

This makes it unnecessary to determine the question as to whether his notice of lien was insufficient because of the error in the same as to the numbers of the lots. He did, however, at the instance and employment of the owner, Mrs. Gordon, after the filing of his lien, and independently of a claim thereunder, do some tinning upon the piazzas and placing of gutters and leaders thereon, of the value of fourteen dollars and sixty-two cents, for which sum he is entitled to a personal judgment against the defendant Gordon, less five dollars paid, and against the defendants Butler & Thurston for the sum of $113.38, that appearing to be the amount that they owe him, after crediting the payment of thirty-five dollars.

The remaining claim for consideration is that of the defendants Vincent B. Eckerson and Asa W. Elvery, who did business as painters under the firm name of Eckerson & Elvery.

They were subcontractors under Butler & Thurston to do the painting of the building and furnish the materials therefor, for $100. They proceeded with their work under Butler & Thurston, but claim that seventy-five dollars worth of the work was done and materials furnished after Butler & Thurston quit. They testify that they did not complete their work until about the middle of April, 1892.

They filed their lien June 9, 1892, for $100. The evidence discloses that Mrs. Gordon continued these defendants in their work of painting. She seems to have considered them in her employ, for she had a conversation with Mr. Eckerson in which she testifies that they signified their willingness to accept fifty dollars as satisfactory, and she thereupon informed them of the source from which she was to obtain her money and stated that she could not pay them until the house was finished, and that they said that if they were paid for their labor they were satisfied, and named fifty-four dollars or fifty-six dollars as the sum. This is undenied.

My conclusion as to the rights of these defendants is that their lien, having been filed after the completion of their labor and furnishing of their materials, is valid and enforceable to the extent of the value of the labor performed and materials supplied, after Mrs. Gordon assumed the performance of the contract, for they were then her employees. *Richardson* v. *Reid*, 3 N. Y. Supp. 224; *Riggs* v. *Chapin*, 7 id. 765–769; *Wollreich* v. *Fettretch*, 4 id. 326.

I find the value of the same to be fifty-six dollars, and sustain their lien for that amount; and for the balance of the contract price with Butler & Thurston, being forty-four dollars, they are entitled to judgment against those defendants personally.

There is testimony to the effect that in the course of the progress of the work upon this building, that Mrs. Gordon, or some one representing her, visited the building, inspected the work, and in such method or otherwise acquired knowledge or information which is sufficient to call for finding that she became personally liable to the subcontractors for work done or materials furnished other than such as she has been charged with above. I do not understand such to be the law.

The proof must go far enough to authorize a finding that it was her purpose and intention to become the employer or purchaser. But in the absence of an agreement by the owner making himself personally liable for the claim of the subcontractor, the latter has a claim against the property no further than the amount unpaid on the contract at the time of filing his lien. *Riggs* v. *Chapin*, 7 N. Y. Supp. 769. In that case Chief Judge McAdam writing the opinion says: "But where an owner employs a contractor and pays him all he contracted to pay, not in advance, but as the work progresses; not collusively, but in good faith, he cannot be again compelled to pay, simply because the contractor subsequently fails to pay those he employed. The contractor has the right to employ assistants, "without the consent of the owner."

The nature of the work would imply that he must. These employees are selected by, and are under the exclusive control

of the contractor, who makes his own contracts with them, and superintends their performance. Mechanics are not compelled to accept employment under him, neither are material men bound to credit him; and, if they do, they must look to his personal credit, or see to it that their notices of lien are filed in time to stop the payments coming from the owner to the contractor according to the terms of the contract, or their effort to acquire a lien on the property may prove abortive."

The defendant Gordon, in her answer, sets up a counterclaim against Butler & Thurston, the contractors, for the ten dollars per day which they, by their contract, agreed to pay her for every day the said building is uncompleted after November 13, 1891, and which she claims aggregated the sum of $1,620 when the building was finally completed, about May 1, 1892.

This seems to be a valid counterclaim. *O'Donnell* v. *Rosenberg*, 14 Abb. Pr. (N. S.) 59; *Morgan* v. *Stevens*, 6 Abb. N. C. 356–363; *Pettis* v. *Bloomer*, 21 How. Pr. 317; *Ward* v. *Hudson River Building Co.*, 125 N. Y. 230.

That, however, as regards the rights of the lienors in this case, is immaterial, for the reason that I have determined there was nothing due Butler & Thurston over and above the expenses which Mrs. Gordon has paid or incurred in completing the building.

It is simply, therefore, a question as to whether Mrs. Gordon is entitled to a personal judgment against Butler & Thurston for such damages.

I am not prepared at this time to dispose finally of this question. I have no proof before me that a copy of this answer was served on those defendants as required by section 521 of the Code of Civil Procedure. It seems that is essential in order to award such relief as is asked. Assuming that she is entitled to such a personal judgment, she cannot recover such an amount. She can only recover the ten dollars per day for such time as elapsed between November 15, 1891, and the time Mrs. Gordon assumed the completion of the contract, and such further period of time thereafter within which the

building could have been completed with diligence and promptness. *Morgan* v. *Stevens*, 6 Abb. N. C. 356–363. The question of waiver may also bear materially upon this matter. *Bigler* v. *New York, etc., Transp. Co.*, 5 N. Y. Supp. 347. This question may be disposed of upon settlement and entry of the judgment. Judgment is accordingly directed as follows:

That the complaint be dismissed on the merits as to the defendant Gordon, and the plaintiff's lien canceled, with costs against the plaintiff; and that the plaintiff have judgment against the defendants Butler & Thurston, for $229.25, with interest, and costs as upon default. That the defendant Hartwicke's lien be declared invalid and canceled of record, and that he have personal judgment against the defendant Gordon for fifty-two dollars and eighty cents, with interest, but without costs to either party as against the other.

That said Hartwicke have judgment against the defendants Butler & Thurston for $181.20, with interest, and costs as on default.

That the liens of the defendants Meyers and Trasbeck, are invalid and be canceled, and that they have judgment against the defendant Hartwicke for the respective amounts of twenty-seven dollars and seventy-five cents and twenty-two dollars and fifty cents, with interest, and costs as on default, and that the lien of the defendant Smith be canceled, and the case as to him be dismissed, without costs.

That the lien of the defendant Moore is invalid and the same be canceled, and that he have judgment against the defendant Gordon, individually, for fourteen dollars and sixty-two cents, and interest, but without costs, and that he have judgment against the defendants Butler & Thurston for $113.38, with interest, and costs as on default.

That the defendants Eckerson & Elvery have judgment for the enforcement of their lien to the amount of fifty-six dollars and interest from the filing of the same, with a trial fee of thirty dollars costs, and upon payment thereof that their lien be canceled; and that they have judgment against

the defendants Butler & Thurston, for the sum of forty-four dollars, with interest, and costs as upon default.

The allowances of costs as above have been made in an equitable sense and seem to accord with authority. *Morgan* v. *Stevens*, 6 Abb. N. C. 356. I will hear counsel further on settlement of the judgment.